THE ARROW STEAMSHIP COMPANY, Respondent, *v.* JAMES GORDON BENNETT, Appellant.

| 73h | 81 |
|---|---|
| 81 | AD³157 |

*Libel — rule determining the sufficiency of a pleading demurred to — application of the words to the plaintiff — proof of special damage — how far the words may be extended by innuendo — words that warrant an innuendo which is clearly libelous.*

The general rule in determining the sufficiency of a pleading demurred to is, that it must be assumed that the facts stated therein, as well as such as may by reasonable and fair intendment be implied from the allegations made, are true.

In an action brought to recover the damages resulting from a libel it is sufficient for the complaint to state generally that the words were published concerning the plaintiff, and, if such allegation be controverted, the plaintiff may establish it on the trial

Pecuniary injury must necessarily result to a corporation engaged in manufacturing, trading or banking, or other occupation in which credit is material to its success, by language concerning it calculated to injuriously affect its credit, and, in such a case, an action may be maintained by the corporation without proof of any special damage

The meaning of words in an alleged libel cannot be extended by innuendo beyond their fair import, aided by extrinsic facts with which they are connected, but the court will inquire whether the innuendo is warranted by the language used, considered in connection with the other facts to which they have relation, and, if found not to be warranted, a demurrer to the complaint will be sustained unless the words, without the innuendo, are actionable.

An innuendo which alleges that the meaning of a portion of an article was that by reason of the publication the plaintiff was forced to discontinue business, is clearly libelous, and if the innuendo is fairly warranted by the publication complained of a cause of action is alleged.

Where the complaint in the action alleged that the defendant published an article in an editorial column of his paper, wherein it was stated that when the plaintiff went fishing for stray twenty-dollar bills, that the defendant looked through the little scheme and told what he saw, that the plaintiff was not pleased, and accused him of misstating facts, but the plaintiff packed up its grip sack all the same, and started for a healthier clime.

*Held,* that the assertion fairly warranted the innuendo; that the effect of the publication was to compel the plaintiff to discontinue business in the place selected by it for that purpose.

APPEAL by the defendant, James Gordon Bennett, from an interlocutory judgment of the Supreme Court in favor of the plaintiff, made at the New York Special Term and entered in the office of the clerk of the city and county of New York on the 10th day of May, 1893, overruling a demurrer interposed to the complaint, with notice of an intention to bring up for review on such appeal the decision rendered on the 5th day of May, 1893, directing the entry of the interlocutory judgment.

*John Townshend,* for the appellant.

*David McClure,* for the respondent.

PARKER, J.:

The complaint alleges ten causes of action. Of these the ninth is not only first attacked, but is made the subject of far more extended consideration than the others on this appeal. This indicates that the learned counsel was of the opinion, as are we, that the other causes of action alleged are still stronger than this.

As we have reached the conclusion that the Special Term rightly overruled the demurrer as to the ninth cause of action, we shall discuss that one only. It reads as follows:

" (I.) The plaintiff is, and was, at the times hereinafter mentioned, a domestic corporation, having its principal office at the city of New York, organized for the purpose of constructing, using and leasing vessels and machinery, under patents, inventions and devices owned by said company, and such as might be acquired by it.

" (II.) The defendant, at the times hereinafter mentioned, was the proprietor and publisher of the ' New York *Herald,*' a daily newspaper, published at the city of New York, State of New York, which newspaper, as this plaintiff is informed and believes, is one of

large circulation, so that, at the time the said articles hereinafter mentioned were published therein, the daily circulation of said paper was in the neighborhood of two hundred thousand copies or more.

"(III.) The prosperity, usefulness, permanency and progress of the plaintiff company were, from the time of its incorporation, dependent not only on the honesty, good faith and skill of its management, and of the agents in various capacities employed by it, but also in the confidence of the public therein, and in the officers and agents who conducted the same.

"(IV.) The plaintiff further avers, on information and belief, that the defendant undertook, as hereinafter more particularly set forth, by a series of malicious and wanton attacks on the officers of the plaintiff company, and upon the trustees of said company, and upon the general management, business, objects and purposes of said company, to break down and ruin the credit and reputation of said officers and of said trustees, and the purposes and objects of said company."

On the 27th day of December, 1887, the defendant maliciously published in the said New York *Herald*, and caused the same to be circulated throughout the United States and elsewhere, certain false and defamatory matter concerning the officers of this plaintiff, and the management and affairs of this plaintiff, and of the plaintiff itself, said false and defamatory matter being contained in an article in the editorial column of said paper entitled : "Real Progress in the South *versus* Booms," wherein it was stated as follows : "When the Arrow Steamship Company went fishing for stray twenty-dollar bills, we looked through the little scheme, and told what we saw. The Arrow Steamship Company was not pleased. They even accused us of misstating facts; but they packed up their gripsack all the same, and started for a healthier clime " (meaning that after the publication of the articles above set forth, the plaintiff company conceded to the public that it was engaged in a swindling scheme, and by reason of the publication of said articles, was forced to discontinue its business) ; and wherein it was further stated as follows: " The *Herald* tells the exact truth about these things" (meaning the articles published as aforesaid, referring to plaintiff). This is followed by allegations of damages, both general and special, and a demand for judgment.

The general rule in determining the sufficiency of a pleading demurred to, is that it must be assumed that the facts stated therein, as well as such as may by reasonable and fair intendment be implied from the allegations made, are true. ·(*Milliken* v. *Western U. T. Co.*, 110 N. Y. 403.)

Formerly it was necessary that the complaint should contain a preliminary averment pointing out the application to the plaintiff of the matter published. But this requirement was done away with by the Code, and it is now sufficient to state generally that the words were published concerning the plaintiff. (§ 535.) If such allegation be controverted, plaintiff may establish it on the trial. Appellant insists that the plaintiff has not complied with the requirement of the Code in such respect. But his position is not well taken.

The paragraph of the complaint introducing the publication of the alleged libelous matter alleges distinctly that defendant published and caused to be circulated " certain false and defamatory matter concerning the officers of this plaintiff, *  *  * and of the plaintiff itself, *  *  * wherein it was stated as follows : "

Comment is unnecessary, for it is obvious that this allegation is in compliance with the Code.

Regarding the right of a corporation to recover damages because of the use of language spoken or written, which injuriously affects its reputation and credit, Mr. Townshend, in his work on Slander and Libel, says :

" A corporation, like an individual, may have a reputation, and a good reputation is equally as valuable to a corporation as to a natural person; and as an individual may sustain injury by language affecting his reputation, so in like manner a corporation." (§ 262.)

" As regards a corporation engaged in manufacturing, trading or banking, or other occupation in·which credit may be material to its success, there, language concerning such a corporation, calculated to injuriously affect its credit, must necessarily occasion it pecuniary injury, and in such a case an action may be maintained by the corporation without proof of any special damage." (§ 263.) (See, also, *Shoe & Leather Bank* v. *Thompson*, 18 Abb. Pr. 413; *Mutual Reserve Fund L. A.* v. *Spectator Co.*, 18 J. & S. 460.)

It is urged that without the innuendo, the matter averred is not libelous.

The rule that the meaning of words in an alleged libel cannot be extended by innuendo beyond their fair import, aided by extrinsic facts with which they are connected, is invoked.

It is claimed that it operates to prevent any consideration of the innuendo, and hence a cause of action is not alleged.

The true rule doubtless is that in such a case the court will inquire whether the innuendo is warranted by the language used, considered in connection with the other facts to which they have relation, and if found not to be warranted, the demurrer will be sustained, unless the words without the innuendo are actionable. (*Fleischmann* v. *Bennett*, 87 N. Y. 231.)

The second portion of the innuendo, which alleges that the meaning of a portion of the article was, " That by reason of the publication plaintiff was forced to discontinue business," is clearly libelous. And the question then is whether such innuendo is fairly warranted by the publication complained of. If so, it follows that a cause of action is alleged. While, as we have seen, a corporation, as well as an individual, may have redress for injury done to its reputation, and where the matters complained of are of the character presented here each has precisely the same standing to recover for the wrong inflicted, yet the meaning of the language employed seems to be more readily apprehensible, if the name of an individual be substituted in the place of a corporation.

For that reason we shall substitute for the purpose of a brief discussion, the words " James Jackson," in the place of " the Arrow Steamship Company." Then in an article headed " Real Progress in the South *versus* Booms," we find it stated that " when James Jackson went fishing for stray twenty-dollar bills, we looked through the little scheme, and told what we saw."

Pausing for a moment to measure the impression which the language so far quoted makes, we find that the inference is clearly suggested that the scheme which the defendant saw through, and which it felt called upon to tell about, was not a creditable one.

This impression is strongly confirmed by the next sentence. After stating that it had told what it saw, the article continues :

" James Jackson was not pleased. He even accused us of misstating facts."

So far, then, the inference may be drawn, indeed it is required,

that the article intended to inform the public that the scheme in which James Jackson was engaged was of such a character that it prompted defendant to look into it, and publish the facts, which were of such a nature that James Jackson denied them, which he would hardly have taken the trouble to have done had they not been harmful to him. But, while he accused us of misstating the facts, said the defendant: "He packed up his gripsack, all the same, and started for a healthier clime."

Does not this assertion fairly warrant the innuendo that the effect of the publication was to compel Jackson to discontinue business in the place selected by him for that purpose? Of what other inference is it capable?

From the statement as made, it would appear that James Jackson was attempting to do business of some kind, for it is alleged that he was looking for twenty-dollar bills, and while he was doing it, the defendant published such a result of its inquiries about his business and plans that, although he denied the accusation, still he packed up and went away. Clearly the inference is permissible from the language employed that, by reason of the publication of said article, he was forced to discontinue his business. The innuendo was, therefore, warranted.

The judgment should be affirmed, with costs and printing disbursements, with leave to the defendant to answer within twenty days after notice of the entry of the order of affirmance, and upon payment of the costs of the judgment appealed from and this appeal.

Van Brunt, P. J., and Follett, J., concurred.

Judgment affirmed, with costs and printing disbursements, with leave to the defendant to answer within twenty days after notice of the entry of the order of affirmance, and upon payment of the costs of the judgment appealed from and this appeal.