Ingraham, J.:
There are two causes of action alleged in the complaint, which set forth two separate libels alleged to have: been published in the' Evening Post, a daily newspaper published in the city of Hew York. As a first cause of action, the plaintiff alleges that lie was a resident of the city of Hew York, engaged in the business of importing, manufacturing and selling men’s furnishing goods, and was a member and officer of a voluntary association known as theMerchants and Manufacturers’ Board of Trade; ” that on the 9th day of February, 1899, the Evening Post Publishing'Cómpany published in the Evening Post two letters which purported to be written by correspondents, addressed to the editor of the Evening Post, one dated “Washington, D. C., February 8th,” and signed “Republi *155 can,” and one dated “ Philadelphia, February 8th,” and signed “E. S.B.”
It is not alleged that these two letters were published on the same sheet or the same column or in immediate proximity to each other-They do not upon their face relate to the same class of people or to the same subject-matter. The first letter is as follows:
“Every Few Yorker ought to paste up the names of those miserable tradespeople you mention * * * etc., and refuse to deal with them. It is disgraceful that to enable such people to overcharge for their wares, the residents of the whole United States should be annoyed. They ought to be hung.
“ Washington, D. C., February 8th. REPUBLICAF.”
This letter, standing alone, could not be construed to be a libel upon anybody. Fo name is mentioned ; no class is mentioned, and proof of no extraneous facts could make it applicable to the plaintiff or to any particular individual. This statement is mot applied to the members of the Merchants and Manufacturers’ Board of Trade, to which the second communication relates, and no connection between the two publications is alleged, except they were published in the same issue of the paper. There is no apparent connection between these two letters, and nothing to show that they had any relation to each other. Certainly, the publication of this one letter, disconnected with any statément in the paper that it applied to any particular individual, would not, by simply alleging that it was published of and concerning him, give such an individual a right of action.
The second letter is as follows:
“ To the Editor of the Evening Post:
“ Sir.— Could I have a copy of the list of ‘ Merchants and Manufacturers’ spoken of in the Evening Post of the 7th under the Baggage Folly ? ’
“ Philadelphia, February 8¿/t.” . E. S. B.”
The statement in the Evening Post of February seventh to which reference is made is not pleaded, nor is it alleged that such statement charged the persons there mentioned with any offense which would sustain an action for libel. So far as appears from the publication, the “Merchants and Manufacturers” spoken of on the *156 seventh under the “ Baggage Folly ’’ were praised for their action. There is nothing to indicate how the persons were spoken of, or that they were charged with any offense or reprehensible conduct. The Evening Post's comment on this letter is as follows:
“(We are printing the list in the form of a neat circular which we shall be glad to send on application. In the meantime we publish it again.—Ed. Evening Post).
“Merchants and-Manufacturers’
<C -X •X■x “ Board of Trade. -X -X -X -X -X -X X X if (6 * • "X* x. “ Board of Directors. •X- 'X -X X -X -X-X •X- *
“Charles Hauptner, shirtmaker, No. 1298 Broadway.
«■» -x * -x- * * * -x * -x » -x»
There is nothing, libelous in this publication, unless it is held that the fact that plaintiff was a meniber or officer of this association would tend to degrade him, or charge him with an offense, an d that is not alleged. The only effect of this notice was to say that the plaintiff was a director of this-association.
The complaint alleges, after setting forth these two publications, that the'defendants thereby meant and intended “to charge and accuse that the plaintiff, a shirtmaker,. doing business in the city of New York, had been guilty of some odious or reprehensible conduct, so that he was a miserable trades person, and that in the conduct of his business he overcharged for his wares, and that every New Yorker ought to paste up his name, thereby meaning, and intending that the citizens of New York should remember and take note of his name as that of a miserable trades person and one who overcharged for his wares, and so shun his name, refuse to deal, and refrain from dealing with him, and that he had so conducted himself that he ought to be hung.”
This allegation would not be sufficient to sustain the action, if the publication itself failed to bear out the innuendo; and, assuming that the first letter would justify the innuendo if published of and concerning the plaintiff, unless it related in some way to him, the innuendo would not be sufficient to-sustain the cause of action. The plaintiff, however, insists that as the complaint alleges that thé *157 article was published of and concerning the plaintiff, that is sufficient under section 535 of the Code of Civil Procedure, and justifies the plaintiff in proving any facts which would show that he was the individual referred to in the article.
That section provides: “It is not necessary in an action for libel or slander to state in the complaint any extrinsic fact for the purpose of showing the application to the plaintiff of the defamatory matter; but the plaintiff may state generally that it was published or spoken concerning him; and if that allegation is controverted, the plaintiff must establish it on the trial.” Undoubtedly, if evidence of • any extrinsic fact would connect the plaintiff with this statement in the first letter, this provision of the Code would apply and the allegation of such fact in the complaint would be unnecessary. But in nó case to whicli our attention-has been called has it been held that a publication not relating to a class, without in any way identifying the persons spoken of, can be made to apply to an individual by a simple allegation that the article was published of and concerning him.
In Arrow Steamship Co. v. Bennett (73 Hun, 81) the libel named the plaintiff corporation by its corporate name, and it was alleged that the matter was published concerning the officers of t-he plaintiff and of the plaintiff itself; and the court said: “ Comment is unnecessary, for it is obvious that this allegation is in compliance with the Code.” The article^ to be a libel, must relate to an individual, and that individual must be the plaintiff. In this publication no individual was mentioned, except that plaintiff was an officer of this association; and there was nothing published of the plaintiff or of the association that was libelous.
It is claimed, however, that the answer alleges that the articles were published of and concerning the plaintiff, and thus supplied any defect in the complaint. By the first allegation of the answer, for a defense to the first cause of action, the defendants specifically deny the allegations contained in the 2d,.,3d, 4th and 5th paragraphs of the complaint and, therefore, expressly deny that this article referred to in the 3d paragraph of the complaint was published of and concerning the plaintiff. For a separate and distinct defense to both causes of action, the answer then alleges that the Evening Post Publishing Company “ was at the times mentioned in *158 the supplemental complaint engaged in the business of carrying on a daily newspaper in the city of Hew York, which newspaper was engaged in the discussion of matters of public interest and importance, both through its own editors and through correspondents interested in such matters of public interest and importance; ” that the plaintiff, “ both individually and as an officer of the voluntary association known as the ‘ Merchants and Manufacturers’ Board of Trade,’ had promoted legislation and treasury regulations which were intended to and did cause annoyance, distress and discomfort to large numbers of persons in .the United States, to wit, citizens of the United States returning to the city of Hew York from foreign travel, by causing such persons to submit to the indignity of being stopped, questioned, examined and searched upon the wharves of the city of Hew York by employees, agents or detectives employed by himself or his association known as the ‘ Merchants and Manufacturers’ Board of Trade ; ’ ” that the plaintiff, “ by his association known as the ‘ Merchants and Manufacturers’ Board of Trade,’ has publicly boasted, and thereby made himself a public character, to wit, one who influences, promotes and procures legislation and rules regulating the administration of such legislation. And that it, therefore, became the duty of The Evening Post Publishing Company, as the conductor of a public journal, to itself, its subscribers and the public, to expose and denounce such conduct on the part of the plaintiff as an officer of said voluntary association known as the ‘ Merchants and Manufacturers’ Board of Trade,’ and to allow correspondents to use its columns for such exposure and denunciation, and that in pursuance of this duty and right the said The Evening Post Publishing Company did publish letters from correspondents containing the matter complained of in the first and second causes of action set forth in the supplemental complaint.” There is no admission or statement in these allegations that the ¡Duplications set up in the first cause of action were published of and concerning the plaintiff. They did allege that the plaintiff and the association of which he was an officer had been engaged in procuring legislation and treasury regulations which caused annoyance to travelers arriving at the port of Hew York from foreign ports, and that it thereby became its duty to expose and denounce such conduct on the part of the plaintiff as an officer of such, association, and to *159 allow correspondents to use its columns for such exposure and denunciation, and that in pursuance of this duty and right the Evening Post Publishing Company did publish letters from correspondents containing the matter complained of in the first and second causes of action set forth in the supplemental complaint; but the object of this defense was to claim that the publications were privileged, and it is not at all inconsistent with the express and direct denial of the allegation that the article published in the first cause of action was published of and concerning the plaintiff.
The answer also alleges, for a third and separate' defense, that the plaintiff was an officer of this voluntary association, in promoting and in boasting of promoting, legislation and regulations designed to annoy, intimidate and oppress citizens of the United States returning from foreign countries, and, in the steps employed by him and his said association, was engaged in an odious and disgraceful occupation and business, and was, and constituted himself, in the opinion of a large number of persons, including the correspondent who wrote the matter complained of in the first cause of action, a miserable person. But there is nothing in this allegation to show that the defendant admitted that the first letter set forth in the first cause of action was spoken of and concerning the plaintiff, or that any one reading that letter would have ground to believe that the plaintiff was the' person referred to. The question that we are considering is, not what the writer of the letter had in mind when he wrote it, but what its tenor fairly indicated. To make the article libelous, it must fairly indicate the plaintiff as the person of whom it was published. If there was no indication in the article itself that it related to any particular individual, it would not be a libel, although the person writing the article might have considered that what he said about the persons referred to in the article would apply to the plaintiff. If the first letter had been published without the second, and the. plaintiff had relied solely upon it, I apprehend there would be no question as to the right of the plaintiff to apply to himself the statement made and ask to recover damages from the defendant for the publication.
. Those portions of the answer to which attention has been called expressly deny that the statement was published of and concerning the plaintiff, and allege that the plaintiff by his conduct had exposed *160 himself to the criticism or condemnation contained in the articles referring to undesignated individuals. In pleading to a complaint in an action of this character, the defendant is allowed to allege a defense of justification,.with any other defense to defeat the plaintiff’s cause.of action ; and the fact that he alleges matter in justification is not an admission of any fact which was' essential for the plaintiff’s recovery. The defendants expressly deny the allegation that this letter was published of and concerning the plaintiff, and then allege facts which they claim made the publication privileged, and also facts which would justify the jjublication if it had related to the plaintiff. Bur neither of these special defenses relieves the plaintiff of his obligation to show that the article complained of was published of and concerning him; and the article on its face not having referred to any individual, there was no cause of action set forth.
What has been said in relation to the first cause of action applies to the second. That article also appears to be in the form of a communication to the editor of thq Evening Post. The innuendo as to this article is, that the defendant published it, thereby meaning and intending to charge and accuse the plaintiff of being one of a number of persons banded together to commit the crime of blackmail; but it is not alleged that the plaintiff was associated with Shayne, or was one of his gang of blackmailers in the association. He was an officer of the association; but the article does not charge that the association or its officers were in any way connected with the óffense, but that in the association was a gang of blackmailers that had been shown up by the Evening Post. The plaintiff’s name is not mentioned ; nor are the officers of the association mentioned as the pexv sons to'whom the letter referred ; and there is nothing to show that this article had any relation or referre'd in any way to the plaintiff, or that he was in any way connected with Shayne. The publication must be a libel to entitle the plaintiff to maintain the action. This libel, if there was one, was in the answei’, not in the publication; and that could not give the plaintiff a cause of action when the publication was not libelous.
What was said in relation to the answer to the first cause of action fully applies to the second. •
I think, therefore, that upon the pleadings no cause of action was *161 alleged, and that the court correctly dismissed the complaint. It follows that the judgment appealed from must be affirmed, with costs.
Van Brunt, P. J., O’Brien, McLaughlin and Hatch, JJ., concurred.
Judgment affirmed, with costs.