Judge Ryland
delivered the opinion óf the court.
The appellee, Richard F. Sags, brought his action against the appellants, Keemle & Field, in the St. Louis court of common pleas, for a lib.el published by them against the plaintiff. The plaintiff below had a verdict and judgment for one hundred dollars,,and the defendants below bring the case here by appeal.
There being n,o statement by the counsel of the facts and points, relied upon, either for reversal or affirmance of this judgment, I must state the facts from the record, and give my opinion of them as they appear therefrom, and of the law arising thereon, The. plaintiff^ declaration at first contained but two counts. The defendants demurred to the declaration, and, the court sustained the demurrer to the first count and overruled it to the second count.
The defendants then obtained leave to plead, and filed their plea to the second count of this declaration. This suit was brought to.the February term of-the court in the year 1848, and at that term the defendants demurred, and afterwards plead as above stated. At the-same term the plaintiff obtained leave and filed his amended declaration containing two additional counts. And at the September term of the court the trial was had in the same year, and the verdict and the judgmentfor the plaintiff. The bill of exceptions in this case shows the following motion: “And now the defendants, by Leslie & Lord, come and move the court for a new trial for the following reasons :
1st. Because the verdict of the jury is against the evidence, and against the weight of evidence.
2nd. Because the verdict of the jury is against the law and evidence.
3rd. Because the court refused to give instructions asked by, defendant.
4th. Because the damages in the verdict are excessive, not warranted by the proof.
*503 This motion was overruled and the opinion of the court excepted to, and this action of the court is one of the errors assigned for the reversal of this judgment. I will, therefore, now dispose of it. The bill of exceptions no where shetvs that any instructions were asked for by either of the parties. The evidence set forth in the bill of exceptions I consider sufficient to maintain the action, and there is nothing in the last reason assigned, that is, the excessive damages. There is no error then in the court below in overruling the motion for a new trial. The other motion is in arrest of judgment, and the following reasons are assigned in its support; 1st. Because the declaration is informal and insufficient inlaw, and therefore no judgment can be rendered thereonj and for particular cause of arrest the said defendants set down the following : The declaration contains no colloquium or special averments, that the words published related to or were spoken of and concerning the plaintiff in his trade and business as a steamboat agent. 2nd. The declaration contains no words averred to have been written and published, by defendants that are actionable. 3rd. Each count in the declaration goes for special damages, and contains no certain specification of the aifiount, by and through what persons or facts the same were sustained. 4th. Because the said declaration, and each count thereof, is in other respects defective and insufficient in law.
This motion was overruled, and the opinion of the court was excepted to, and is assigned as one of the errors relied on for the reversal of the judgment. This I consider the principal error assigned, and upon its disposition depends the judgment of this court.
The libelous words charged in the declaration as published by the defendants in their newspaper, {i The Daily Reveille,” against the plaintiff are the following, stript of all inuendoes :
“R. E. Sass, steam boat agent, this impertinent person withheld from us on Saturday, New Orleans papers of a late date, entrusted to him for this office by the clerk of the Lucy Bertram. We desire our steam boat friends hereafter to retain favors intended for the Reveille in their own hands until called for, as we put no trust in Mr. Sass whatever, as far as we are concerned. Officers of steam boats will confer a favor by sending to us direct for exchanges, as we are under the impression that those to them through this small individual have frequently missed their direction.”
Are these words when falsely and maliciously printed and published of a person, actionable as a libel ? And has the plaintiff declared upon them in such a manner as to justify the courts in sanctioning his action? *504 As to the first question, I am satisfied beyond a doubt that such a publication of them as the question implies is actionable.
In the case of Nelson vs. Musgrave, decided by this court and reported in vol. 10, page 648, the court adopts the language of Judge Parsons in the case of the Commonwealth vs. Clapp, 4 Mass. Rep. 168. That distinguished jurist defined a libel to be “a malicious publication expressed either in printing or writing, or by signs or pictures tending to blacken the memory of the dead or the reputation of one who is alive, and expose him to public hatred, contempt or ridicule.”
In McCorkle vs. Binns, (5 Benning's Rep. 349) chief justice Tilghman says, “The distinction between slander by words and by printing or writing, is so well known that it is unnecessary to dwell on it. Suffice it to say, that any malicious printed slander which tends to expose a man to ridicule, contempt, hatred or degradation of character, is a libel.” Justice Yeates in the same case observes, that “any printed publication that tends to bring a man into disrepute, ridicule or contempt, is a libel in a legal sense.” This definition is not less applicable, when the suit is brought by a party injured than when a public prosecution is instituted. Stow vs. Converse, 3 Con. Rep. 341; Clark vs. Binney, 2 Pick. Rep. 115; Southwick vs. Stevens, 10 Johnson Rep. 443; Steele vs. Southwick, 9 Johnson Rep. 214; Thomas vs. Croswell, 7 Johns. 264; Walker vs. Winn, 8 Mass. Rep. 248; Cooper vs. Greely, 1st Denio’s Rep. 347; the People vs. Croswell, 3 Johns. cases, 354. Any written slander, though merely tending to render the party subject to disgrace, ridicule or contempt, is actionable, though it do not impute any definite crime. The publication made in this case by the appellants against the appellee, is fully within the principle contained and supported by the above authorities, and without any authority, were it a new case, I am prepared to say, in my opinion, that such a publication is actionable, and that when falsely and wickedly, and maliciously made, inflicts an injury which the courts and juries of the country should redress by ample pecuniary remuneration. The good of society, the public peace, good morals, the usefulness and liberty of the press itself, require this course to be taken by the courts and juries. The freedom and liberty of the public press will be always promoted and maintained by restraining its licentiousness ■—“ut vivas, igitur, vigila.”
It remains now tobe seen whether the appellee has so declared upon this publication as to sustain the action. For this purpose it is only necessary to insert herein the amended declaration, which is as follows : “And the said plaintiff, leave of the court being first obtained, comes *505 and by Hudson, his said attorney, further complains of the said Charles Keemle and Joseph M. Field, the said defendants in this cause. For that, whereas the said plaintiff was, and is now, a good, true, honest and just citizen of the county and State aforesaid, and has not ever been guilty, or until the time of the committing of the several grievances' by the said defendants, as hereinafter mentioned, been suspected to have been guilty of the offences and misconduct hereinafter mentioned, to have been charged upon and imputed to him the said plaintiff, or of any other such offences and misconduct, but that before and at the time of the committing the grievances hereinafter mentioned, the said plaintiff used, exercised, and carried on the trade, occupation, and business of steam boat agent, and had always conducted himself in his said trade and business of steam boat agent, in an honest, upright, fair and honorable manner, and was honestly acquiring great gains and profits in his said trade and business. Yet the said defendants well knowing the premises, but wickedly and maliciously intending to injure the said plaintiff, and to cause it to be suspected and believed that the said plaintiff had been and was guilty of the offences, misconduct, and unfairness hereinafter mentioned-, to have been imputed to him on the 23rd day of November, in the year of our Lord 1847, at St. Louis, in the county aforesaid, the said defendants falsely, wickedly and maliciously, did compose, print and publish, and cause to be composed, printed and published^ in a certain newspaper edited, owned and published by said defendants, called “The Daily Reveille,55 of and concerning the plaintiff, and of and concerning him, in relation to his said trade and business aforesaid, certain other false, scandalous, malicious, defamatory and libellous matters following of and concerning the said plaintiff, and of and concerning him in his trade and business aforesaid, that is to say, R. F. Sass, (meaning the said plaintiff) steamboat agent, this impertinent person, (meaning the said plaintiff) withheld from us (meaning themselves the said defendants) on Saturday last, meaning the Saturday next before the said 23rd day of November, A. D. 1847, New Orleans papers (meaning newspapers) of alate date, entrusted to him, (meaning thesaid plaintiff) for this office (meaning for the office aforesaid, The Daily Reveille) by the clerk of the Lucy Bertram, (meaning the clerk of the steam boat Lucy Bertram) we (meaningthemselves, thesaid defendants)desire our steam boat friends, (meaning the steam boat friends of said defendants) hereafter to retain favors (meaning newspapers) intended for the Reveille (meaning the said The Daily Reveille) in their own hands (meaning in the hands of the steam boat friends of said defendants) until called *506 for, as we (meaning themselves the said defendants) put no trust in Mr. Sass (meaning the said plaintiff ) whatever, as far as we (meaning themselves the said defendants) are concerned. Officers of steam boats will confer a favor by sending to us (meaning themselves the said defendants) direct for exchanges, (meaning for newspapers) as we (meaning themselves the said defendants) are under the impression that those (meaning newspapers) sent to them (meaning officers of steam boats) through this small individual, (meaning the said plaintiff ) have frequently missed their (meaning said newspapers) direction; meaning thereby that the said plaintiff was an impertinent person, an unfaithful, dishonest and unfair steam boat agent, and unworthy the confidence of the community, and that he, the said plaintiff, was unfair, unfaithful and dishonest in his trade and business of steam boat agent as aforesaid. By reason of the committing of which last mentioned grivances by the said defendant, as aforesaid, the plaintiff was greatly injured in his said good name, fame and credit, and in his said trade, occupation and business, and has, by reason of the premises, been injured, and has sustained damages in the sum of two thousand dollars. And whereas the said plaintiff before and at the time of the committing of the grievances by the said defendants, as hereinafter mentioned, was a steam boat agent and the trade and business of steam boat agent, then exercised and carried on, to wit: at St. Louis, in the county aforesaid. And whereas the said plaintiff hath not ever been guilty, or until the time of the committing of the said several grievances by the said defendants, as hereinafter mentioned, been suspected to have been guilty of the offences and misconduct, as hereinafter stated to have been charged upon and imputed to him by the said defendants, or of any other such offences or misconduct. And the said plaintiff hath always exercised, and conducted, and carried on, and still doth exercise, conduct and carry on his said trade and business of steam boat agent with promptness, integrity, fidelity and fairness, by means of which said premises, the said plaintiff before the committing of the said several grievances by the said defendants, as hereinafter mentioned, had deservedly obtained the good opinion, confidence and credit of all his neighbors, and of divers steam boat captains, officers and owners of steam boats, and was daily and honestly acquiring great gains and profits in his said trade and business of steam boat agent, and to the comfortable support of himself and his family, to wit, at the county aforesaid. Yet the said defendants well knowing the premises, but greatly envying the happy state and condition of the said plaintiff, and contriving and wickedly and maliciously intending to injure the said plaintiff in his said good name, fame and credit, and to bring him into public infamy, *507 scandal and disgrace, and to injure, oppress, and wholly ruin him in his said trade and business aforesaid heretofore, to wit, on the 27th day of November, in the year of our Lord 1847, at St. Louis, in the county aforesaid, falsely, wickedly and maliciously, did compose and publish, and caused to be composed and published of and concerning the said plaintiff, and of and concerning him in his said trade and business aforesaid, a certain other false, scandalous, malicious and defamatory libel, as follows, that is to say, R, F. Sass ( meaning the said plaintiff) steam boat agent, this impertinent person (meaning the said plaintiff) withheld from us (meaningthemselves the said defendants) on Saturday last, (meaning the Saturday next before the 27th da}'of November, A. D. 1847,) New Orleans papers (meaning newspapers, published in New Orleans), of a late date entrusted to him (meaning the said plaintiff) for this office, (meaning the office of said The Daily Reveille) by the clerk of the Lucy. Bertram, (meaning the clerk of the steam boat Lucy Bertram) we (meaning themselves the said defendants) desire our steam boat friends (meaning the steam boat friends of said defendants) hereafter to retain favors intended for the Reveille (meaning the said The Daily Reveille) in their hands (meaning in the hands of the steam boat friends of said defendants) until called for, as we (meaning themselves the said defendants) put no trust in Mr. Sass (meaning the said plaintiff) whatever, so far as we (meaning themselves the said defendants) are concerneda. Officers of steam boats will confer a favor by sending to us (meaning themselves- said defendants) for exchanges, (meaning for newspapers) as we (meaning themselves said defendants) are under the impression that those (meaning newspapers) sent to them (meaning to the officers of steam boats) through this small individual (meaning the said plaintiff ) have frequently missed their (meaning newspapers) direction. By. means of the committing of said last mentioned grievances by the defendants as aforesaid, the said plaintiff has been and is greatly injured in his said good name, fame and credit, and in his said trade and business, and has, by reason, of the premises, last aforesaid, been injured, and has sustained damages in the sum of two thousand dollars : therefore he brings his suit, &c.55'
The declaration I consider sufficient to support the judgment. I, therefore, find no error in the court below in overruling the defendants motion in arrest of judgment. From all that appears to this court then;from the record and proceedings below, I can find no good and sufficient cause why the judgment should be reversed. And my brother judges agreeing with me in the opinion, the judgment of the court of common pleas is affirmed.