Manget v. O'Neill.

FRED MANGET, Respondent, v. JOHN O'NEILL,
Appellant.

St. Louis Court of Appeals, November 9, 1892.

1. **Libel**: EXCESSIVE DAMAGES.   Since there is no fixed money standard
by which injury to character or reputation can be measured, a verdict
in an action for libel will be vacated on appeal, on the ground of
excess, only where the damages are so disproportionate to any possible
injury by the publication as to clearly indicate bias or prejudice on
the part of the jury.

2. **Witnesses**: CROSS-EXAMINATION ON IMMATERIAL MATTERS.   A party
is not entitled to introduce evidence contradictory of the testimony of
an adverse witness on immaterial matters, which he has elicited on
the cross-examination of the witness.

3. **Practice, Appellate**: ADMISSION OF IRRELEVANT EVIDENCE: NON-
PREJUDICIAL ERROR.   The admission of irrelevant testimony is not
ground for reversal, unless there is some probability that it affected
the result.

4. **Libel**: IMMATERIALITY OF MOTIVES OF PLAINTIFF IN SUING.   The
motives of the plaintiff in bringing an action of libel—whether he was
induced by a desire to derive gain or to punish the defendant—is
wholly immaterial, and cannot affect either the right or the extent of
his recovery.

5. ———: LIBEL PER SE.   A publication is libelous and actionable
*per se*, when it is false and tends to expose the plaintiff to public
hatred, contempt and ridicule, or to blacken his reputation.   And
*held*, that the publication in this case was libelous *per se* under this
rule.

*Appeal from the St. Louis City Circuit Court.*—HON.
- DANIEL DILLON, Judge.

AFFIRMED.

*Laughlin & Tansey*, for appellant.

*Edmond A. L. Garesche*, for respondent.

ROMBAUER, P. J.—The defendant was the publisher
of the *Irish-American*, a campaign sheet of limited cir-

culation, in which he inserted on October 25, 1890, the following publication of and concerning the plaintiff:

"Fred Manget, A Christian *Confidence Man*. His first appearance in St. Louis *a betrayal of confidence and friendship*.

"History: This fakir came to St. Louis upon a visit. In making the usual call upon the fraternity he dropped in to see the writer. After entertaining him, and dining him, and explaining the beauties of the business, Mr. Christian Manget departed. I supposed he had departed for his home in Texas, but, to my great astonishment, after returning from supper the following evening, my clerk, Mr. Wilson, stated to me that he wished to quit working for me. I asked for an explanation, but none could or would be given, except that he insisted upon being paid off, which I was compelled to do, of course, to my very great astonishment. The next day I learned Manget, the *con. man*, had secured the office at 508 Chestnut street, and that my former clerk would be his clerk. Persons in the business will understand this fully. The meaning of this was: Mr. Wilson was employed to give this *whelp* information, which he could not secure for $5,000 in any other way. But he followed up his *crooked work* by only keeping Wilson three months, and then Mr. Wilson was permitted to return to his hack-driving business, from which I had taken him. This specimen is too contemptible for any decent person to associate with. (*To be continued.*)"

The italics are ours.

The statement referred to matters which had occurred more than ten years prior to the publication. It appeared in evidence that, immediately preceding the publication, the plaintiff and the defendant had a protracted litigation in which the plaintiff was successful, and, as no other explanation was furnished by

Manget v. O'Neill.

the defendant why the publication was made, it is fairly presumable that it was a purely retaliatory act, and clearly malicious. The plaintiff's petition is founded on this publication.

The answer admitted the ownership of the newspaper, and the publication, but denied that the matter was libelous, or that the plaintiff was injured. The answer further denied malice in the publication, and averred that the statement was published in good faith under a belief that it was true. Upon a trial before a jury the plaintiff recovered a verdict for $600, $100 of which was awarded by the jury as exemplary damages.

The errors assigned are that the court erred in its rulings on the evidence and instructions, and that the damages assessed are excessive.

In passing on this last assignment we need only say what we have repeatedly stated heretofore, that, since there is no fixed money standard by which injury to character and reputation can be measured, we can vacate a verdict on the ground of excess only in cases where the damages awarded are so disproportionate to any possible injury done by the publication, as to clearly indicate bias or prejudice on part of the jury. That this is not such a case appears from the statement of the facts above made.

It was in evidence that, while the defendant's newspaper was one of limited circulation to subscribers, he had mailed as many as ten thousand copies of single editions at times, and it did not appear that the edition containing this publication was not distributed by many thousands.

The plaintiff was and is a railroad ticket broker, and was a witness in his own behalf. On his cross-examination he was. asked whether he did not also, under the guise of manufacturing medicines and bitters, make a compound containing whiskey for the purpose

of selling it in states where the sale of whiskey is pro-
hibited by law. He admitted that he manufactured
the compounds, but denied that he did so with the
purpose mentioned. The defendant thereupon called
two witnesses for the purpose of contradicting the
plaintiff on this point, but the court would not permit
him to do so, and the defendant excepted and still
excepts. This ruling was clearly correct. The cross-
examination was touching a matter in no way involved
in the issues, and a witness cannot be impeached by
evidence contradicting him as to such matters elicited
on his cross-examination. *Harper v. Railroad*, 47 Mo.
567; Odgers on Slander, sec. 320.

The plaintiff was asked on his cross-examination:
"Did you bring this suit for money, or to get O'Neill
punished?" The court properly excluded the question.
*Quo animo* the plaintiff brought the suit was wholly
immaterial, and could not affect either the right or
extent of his recovery. *Bradley v. Kennedy*, 2 G.
Greene (Iowa) 231.

Two witnesses for the plaintiff were permitted to
answer, against defendant's objection, the question
whether a ticket broker is of any benefit to the traveling
public, and whether a man's social position is affected
by his being a ticket broker. The defendant endeavored
to show, on cross-examination of plaintiff's witnesses,
that the business of a ticket broker is not a respectable
calling, and was injurious to the railroads and travelers,
and rendered them socially *off color*. The evidence of
these witnesses which the court admitted both on cross-
examination and on their re-examination was irrelevant,
and should have been excluded, but the defendant's
objection was neither sufficiently specific to found an
exception on, nor is the admission of mere irrelevant
testimony ground for reversal, unless there is some
probability that it affected the result, *Anderson v.*

*Shockley*, 82 Mo. 250; *Seibert v. Supreme Council*, 23 Mo. App. 268.

It is also contended by the defendant that the words published not being actionable *per se*, and no special damages being shown by the evidence, the verdict is unsupported by the evidence. *Terwilliger v. Wands*, 17 N. Y. 54, and *Wilson v. Goit*, 17 N. Y. 442, are cited in support of this proposition. Both these cases were actions for oral slander. The defendant's argument overlooks the distinction between oral slander and written slander or libel, which was recognized in this state as early as *Nelson v. Musgrave*, 10 Mo. 648, and has been maintained ever since. *Keemle v. Sass*, 12 Mo. 499; *Price v. Whiteley*, 50 Mo. 439. The definition of libel, as adopted in the first case above quoted, has since that time passed into our criminal statutes, and it suffices to make any publication libelous and actionable *per se*, that it is false and tends to expose the plaintiff to public hatred, contempt and ridicule, or to blacken his reputation. Thus in *Nelson v. Musgrave*, *supra*, it was held that to publish of a man, "He is thought no more of than a counterfeiter, a horse thief, a liar and a false swearer," was a defamatory publication actionable *per se*. In *Price v. Whiteley*, *supra*, it was held that to publish of one that "He is an imp of the devil and cowardly snail" was actionable *per se*, and this is no stronger than to call one "a confidence man," who "betrays confidence and friendship" and "a whelp," and to charge him with doing "crooked work," and designate him as "a specimen too contemptible for any decent person to associate with."

We see no error in the instructions. As none of the exceptions saved are tenable, it results that the judgment must be affirmed. All the judges concurring, it is so ordered.