### DANIEL v. NEW YORK NEWS PUB. CO.

(Supreme Court, General Term, First Department.    January 13, 1893.)

**1. LIBEL—PRIVILEGED COMMUNICATION.**
Defendant newspaper published a notice that plaintiff "is reported as soliciting advertisements for this paper.   He has no account and no authority to represent the News.   Any such statement on his part is fraudulent, deceptive, and for dishonest and malicious purposes."   *Held*, that it could not be claimed that, as the publication related to defendant's business, it was a privileged communication. it not being something communicated and then published, but being a notice emanating from defendant itself.

**2. SAME—EVIDENCE—QUESTION FOR JURY.**
It was shown that some one claiming to be an advertising agent was offering to accept advertisements on representation that they would be inserted in defendant's paper at a less rate than defendant charged for such advertisements.    To connect plaintiff with such complaints. defendant produced a witness who testified as to interviews with plaintiff in which he offered to receive advertisements at a less rate than could be obtained by a personal application to defendant.    This evidence was denied by plaintiff, and, though his credibility was affected by contradictions in his testimony, the credibility of defendant's witness was also shaken by proof of his having been convicted of a crime.    *Held*, that the question of how far plaintiff was connected with the offers for the advertisements at reduced rates was properly left to the jury.

**3. SAME—MITIGATION OF DAMAGES.**
Defendant requested a charge that if, previous to the publication complained of, defendant was informed that plaintiff was reporting himself as connected with defendant, and authorized to solicit advertisements for defendant newspaper. and that he had no such authority, and defendant believed the information to be true, and the publications were made to protect its own interests, or to caution the public against imposition, and that defendant had no malicious motive in the publication, the verdict should be for defendant.    *Held*, that it was proper for the trial court to refuse to charge that in such case the verdict should be for defendant, but to charge that all those circumstances and facts. if found to be true, might be taken into consideration in determining the damages plaintiff should receive.

**4. SAME—EVIDENCE OF DAMAGE.**
Where the complaint alleges special damage to plaintiff's business from the publication, it is proper to ask him on the trial what proportion of his business fell off immediately after the publication of the paper.

**5. SAME—HEARSAY EVIDENCE.**
Of the two persons named in the complaint as having ceased to do business with plaintiff on account of the publication, one had died since that time, and the other was produced as a witness.    Plaintiff was allowed to testify to what these persons told him as to their reasons for discontinuing business with him.    *Held*, that the evidence was hearsay, but its admission was not reversible error, where the person who was living was produced on the trial, and the opportunity thus afforded of establishing by him the fact testified to by plaintiff; and, in the case of the one who died, the error was not reversible because, when plaintiff was asked what deceased said to him, no objection to the question was made.

Appeal from special term, New York county.

Action by Gustav Daniel against the New York News Publishing Company to recover damages for libel.    From a judgment entered on

the verdict of jury in favor of plaintiff for $1,380.20, and from an order denying its motion for a new trial, defendant appeals.    Affirmed.

Argued before O'BRIEN, FOLLETT, and BARRETT, JJ.

James M. Smith, for appellant.
Julius Lehmann, (Charles Strauss, of counsel,) for respondent.

O'BRIEN, J.    The action was brought to recover damages for libel. On the 12th day of March, 1889, the plaintiff was an advertising agent. On that date the defendant published in the New York Daily News the following notice:

"Gustav Daniel is reported as soliciting advertisements for this paper.    He has no account and no authority to represent the News.    Any such statement on his part is fraudulent, deceptive, and for dishonest and malicious purposes."

Upon seeing such notice, the plaintiff called on the business manager of the defendant, complained thereof, insisted it was false, and requested that it should be discontinued; but, notwithstanding such request on the part of the plaintiff, it was repeated in the next day's issue of the paper.    In addition to setting forth the publications as above, the plaintiff alleged in his first cause of action that the said matter and statements were published "with the wrongful intent of injuring this plaintiff in the community and in his business."    In his second cause of action, after setting forth the other necessary averments, he alleged injury to his business resulting from such publication, stating that "the plaintiff has lost, among others, by reason thereof, the business and patronage of" two persons named, "besides the business of many others."    The defendant, while admitting the publication, denied that it was done maliciously or with wrongful intent.    It then set up that previous to the publication the plaintiff had solicited advertisements for the defendant's paper, and had collected money from different persons for advertisements procured by him, with the knowledge and approval of the defendant, but that certain of the moneys so collected he did not pay over to the defendant. In addition the defendant charged, as a justification, that just previous to such publication moneys were so collected and not returned, and that plaintiff had tried to induce different persons who were patrons of the paper to give their advertisements to other papers, at the same time holding out inducements to them that he could procure them advertisements in defendant's paper at a much less rate than they were paying defendant for the same.

The first thing to be noticed is the character of the defamatory matter complained of.    It was urged upon the trial that relating, as it did, to the defendant's business, and proof being offered to show that the statement therein that the plaintiff "had no account and no authority to represent the News" was true, it came under the head of a privileged communication.    We think it could not be so considered.    It was not claimed to have been in any way communicated to the defendant and then published, but it purports to be a notice emanating from the defendant itself.    Had it stopped with the words last quoted, we do not see that the plaintiff, upon the proof offered here, would have had any

reasonable ground of complaint. The portion, however, of the notice which had a direct tendency to injure the plaintiff in his business, and which was undoubtedly libelous per se, was that charging that the plaintiff in soliciting advertisements for the defendant's paper was making a statement which on his part, to quote the words of the notice, was "fraudulent, deceptive, and for dishonest and malicious purposes." Assuming, however, the words to be libelous, the appellant contends that justification therefor was proven, in that evidence was offered to show the truth of the statements in the publication. The most that can be said in reference to that is that there was conflicting evidence in regard to the relations which for many years had existed between the plaintiff and the defendant, and which resulted, as far back as 1879, in the plaintiff having adjusted and settled moneys which he owed to the defendant for advertisements inserted in the paper by giving a promissory note therefor. It can hardly be claimed that this justified the publication made so long afterwards. The remaining evidence tended to show that information was given to the defendant that some one claiming to be an advertising agent was offering to accept advertisements upon representation that they would be inserted in defendant's paper at a rate less than the defendant charged for such advertisements. For the purpose of connecting the plaintiff with the complaints by customers as to the representations so made, a Dr. Whitehead was produced, who testified as to interviews with the plaintiff in which the plaintiff was stated to have made the offer to receive from the doctor advertisements at a less rate than he could obtain by personal application to defendant. This testimony was denied by plaintiff; and, however seriously the contradictions in plaintiff's own version as to what the interviews were between himself and the doctor may have affected his credibility, these were more than offset by the proof presented to show that the doctor himself had been convicted of a crime, and thus his credibility likewise affected. The averment of complaints having been made to the defendant was undoubtedly sustained; but how far the plaintiff was connected therewith was a question which, upon such testimony, was fairly presented in the impartial charge of the trial judge to the jury. We cannot, therefore, upon the whole testimony, say that there was such a preponderance in favor of the defendant as would have justified the court in not submitting the entire case as to plaintiff's right to recover damages for the alleged publication, or warranted a setting aside of the verdict for the amount awarded by the jury.

Many questions are presented by exceptions taken to the admission and exclusion of evidence, and three to certain requests to charge the jury made by the defendant. Of the latter, two were good, abstract propositions of law, which were concurred in by the trial judge, with the statement, however, which was justified under the evidence, that they had no bearing upon the facts of the present case. The fourth request was one in which the defendant asked the court to charge:

"If the jury find from the evidence that, previous to the publication complained of, the defendant was informed that the plaintiff was reporting himself as being connected with defendant, and authorized to solicit advertisements for

said newspaper, and that said plaintiff had no authority to represent said defendant, and also that said defendant believed, and had reason to believe, such information to be true, and that such publication was made to protect its own interests, or to caution the public against imposition, and that the defendant had no malicious motive in the publication, their verdict should be for the defendant."

In answer thereto the court, no doubt having in mind the rule of law that good motives and an honest belief in the truth of a publication are not a legal excuse for the defamatory matter, we think correctly, said:

"I do not charge you that your verdict should be for the defendant, but I charge you that all those circumstances and all those facts, if found by you to be true, may be taken into consideration in determining the amount of damages which the plaintiff should receive."

This leaves exceptions to rulings upon evidence, which will be referred to in the order in which they are presented by the record.

Plaintiff was asked to state what proportion of his business fell off immediately after the publication of the paper. This question was objected to upon the ground "that the pleadings do not authorize the introduction of the testimony, and that therefore it is incompetent under the issues in this case." This objection was untenable, as we have already shown, by the quotation made from the complaint, that damages to the business of the plaintiff were specially alleged therein. The court correctly, therefore, under the authority of Bergmann v. Jones, 94 N. Y. 51, allowed the testimony.

Of the two persons named in the complaint as having ceased to do business with the plaintiff on account of the publication, it was shown that one had since that time died, and the other was produced as a witness upon the trial. Over the defendant's objection, the plaintiff, to show the connection between the publication and the loss of their custom, was allowed to testify to what these persons told him with respect to their reasons for discontinuing doing business with him. This evidence was clearly hearsay and incompetent; and the question, therefore, is whether the objections thereto were taken in such a way that they are available, or whether the injury thus resulting to the defendant was sufficient to justify a reversal of the judgment. As to the witness produced upon the trial, the opportunity thus afforded of establishing the same fact as was testified to by the plaintiff—that the discontinuing of his dealings with the plaintiff was due to the article named—repaired what might otherwise have been the injurious effects of allowing such hearsay evidence as to this witness. With regard to the one who had died, the record is as follows:

"Question. Did Boese tell you why he discontinued doing business with you? Answer. Yes, sir; he did. (Objected to, objection overruled, and defendant excepts.)"

It will be noticed that this question only called for a statement as to whether he had given him the reasons for discontinuing business, and it will be further noticed that the objection was not made until the answer was given. When the witness, however, was asked the question following upon this introductory one, as to what he did say, no objection was made thereto. We do not think, therefore, that the question is presented by a proper exception. The testimony having been

allowed to get in the case without objection, it should not now be availed of for the purpose of reversing the judgment. We have examined the other exceptions taken to the rulings, but none of them are as important as the ones just considered, most of them being trivial in their nature, and not worthy of serious consideration. Upon the whole case we think it was fairly tried, both parties having the advantage of an impartial charge which presented the questions at issue between them to a jury, and that the judgment should be affirmed, with costs. All concur.